1                                                              O
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11
12   Nocher Enterprises, Inc. a  )   CV 18-3897-RSWL (JEMx)
     California corporation,     )
13                               )
                Plaintiff,       )   **ORDER re: Defendants'**
14                               )   **Motion to Dismiss for**
                                 )   **Lack of Personal**
15        v.                     )   **Jurisdiction [17] and**
                                 )   **Motion to Dismiss for**
16                               )   **Failure to State a Claim**
     AVENTUS OUTREACH, LLC, a    )   **[18]**
17   Florida limited liability   )
     company; OLIVER DAWOUD, an  )
18   individual; AVENTUS BIO     )
     LABS, INC., a Florida       )
19   corporation; and AVENTUS    )
     HEALTH, LLC, a Florida      )
20   limited liability company,  )
21                               )
                ___Defendants.___
22
23        Plaintiff Nocher Enterprises, Inc. ("Plaintiff")
24   filed the instant Action against Defendants Aventus
25   Outreach, LLC ("Outreach"); Aventus Health, LLC
     ("Health"); Oliver Dawoud ("Dawoud"); and Aventus Bio
26   Labs, Inc. ("Bio Labs") (collectively, "Defendants"),
27   for damages arising from an alleged breach of contract
28

                                  1

and negligent misrepresentation.  Currently before the
Court is Defendants' Motions to Dismiss for (a) lack of
personal jurisdiction [17] and (b) failure to state a
claim [18].  Having reviewed all papers submitted
pertaining to these Motions, the Court **NOW FINDS AND
RULES AS FOLLOWS:**

## I. BACKGROUND

**A.   Factual Background**

Plaintiff is a California corporation doing
business in California.  First Am. Compl. ("FAC") ¶ 1,
ECF No. 13.  Defendants Outreach and Health are Florida
limited liability companies, Bio Labs was a Florida
corporation,[1] and Dawoud is an individual and the
principal/owner of Outreach.  Id. ¶¶ 2-5.  The nature
of Defendants' business is "testing medical specimens
from all over the United States at their Florida
laboratories."  Defs.' Mot. to Dismiss re Personal
Jurisdiction ("Jurisdiction Mot.") 1:13-14, ECF No. 17.
Defendants "held themselves out as one and [the] same
entity" and under the "same banner and trade name of
Aventus Biolabs a/k/a AventusBiolabs.com."  FAC ¶ 7.

Plaintiff alleges that on April 19, 2017,
Defendants invited Plaintiff to "enroll its accounts"
with Defendants for the sale and service of "specimens"
to Defendants as ordered by Defendants.  Id. ¶ 12.  At

---

[1] According to Defendants, Bio Labs is a dissolved
corporation that never did any business.  Jurisdiction Mot. at
11:27-28.

that time, Defendants promised to pay Plaintiff a
specified percentage of the net payment that Defendants
would receive from testing the specimens. Id.
Defendants also promised to account for their
collections by providing Plaintiff with summarized
reports indicating the amount collected per claim,
provider name, and claim date, and an access to an
online portal to verify collection data. Plaintiff
alleges that in reliance on Defendants' promises, it
started delivering specimens to Defendants. Id.

According to Plaintiff, Defendants avoided doing
business with California entities due to state laws but
made an exception for Plaintiff because of the expected
large volume of business it would generate for
Defendants. Id. ¶ 11. The primary source of specimens
provided by Plaintiff were from California providers[2]
(e.g., hospitals, doctors, and rehabilitation centers).
Id. ¶ 13.

As of August 2017, Defendants paid Plaintiff
$170,000 for approximately 600 specimens out of the
11,000 specimens Plaintiff provided, which Plaintiff
alleges Defendants have collected millions of dollars
from. FAC ¶¶ 17, 23. Defendants did not provide
reports on collections to Plaintiff and denied
Plaintiff access to the online portal. Id. ¶ 17. In
November 2017, after Plaintiff repeatedly requested

_____

[2] Approximately 85% of providers from which Plaintiff
procured the specimens were California based. FAC ¶ 15.

payment and an accounting, Defendants e-mailed
Plaintiff an Excel spreadsheet "that was purportedly
the amount of collection [D]efendants made on
[P]laintiff's samples for September 2017." <u>Id.</u> ¶ 18.
However, according to Plaintiff, Defendants had
"materially falsified the amounts collected . . . to
justify not paying [P]laintiff any money for the
samples." <u>Id.</u> ¶ 19.

As a result, Plaintiff filed this Action against
Defendants, alleging negligent misrepresentation,
breach of implied contract, breach of oral contract,
common counts, unjust enrichment, and accounting. <u>See</u>
<u>generally</u> <u>id.</u>

**B.** **Procedural Background**

This case was Removed from Superior Court [1] to
this Court on May 9, 2018. Plaintiff filed its FAC
[13] on July 9, 2018. Defendants filed a Motion to
Dismiss for Lack of Personal Jurisdiction [17] and a
Motion to Dismiss for Failure to State a Cause of
Action [18] on August 13, 2018. Plaintiff filed its
Oppositions [19, 21] to the instant Motions on
September 1, 2018. On September 11, 2018, Defendants
filed their Replies [25, 27] to each Opposition as well
as Objections to the Declaration of Jamie Nocher [26,
28].

///

///

///

**II. DISCUSSION**

**A.   Legal Standard**

    1.   <u>Personal Jurisdiction</u>

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the Court may properly exercise jurisdiction over the defendant. <u>Pebble Beach Co. v. Caddy</u>, 453 F.3d 1151, 1154 (9th Cir. 2006). Absent formal discovery or an evidentiary hearing, a plaintiff need only make a prima facie showing that jurisdiction is proper to survive dismissal. <u>Id.</u> at 1154.

To satisfy this burden, a plaintiff can rely on the allegations in his complaint to the extent they are not controverted by the moving party. <u>Barantsevich v. VTB Bank</u>, 954 F. Supp. 2d 972, 982 (C.D. Cal. 2013). If defendants adduce evidence controverting the allegations, however, the plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." <u>Id.</u> at 982 (citation omitted). "Conflicts between parties over statements contained in affidavits [or declarations] must be resolved in the plaintiff's favor." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004).

"The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." <u>Pebble Beach</u>, 453 F.3d at 1154-55. California

5

authorizes jurisdiction to the full extent permitted by the Constitution. See Cal. Code Civ. Proc. § 410. Therefore, the only question the Court must ask is whether the exercise of jurisdiction over defendants would be consistent with due process. Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1129 (9th Cir. 2003).

Due process requires that a defendant must have such "minimum contacts" with the forum state that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Minimum contracts requires that the defendant must have purposefully availed itself of the privilege of conducting activities within the foreign jurisdiction, thereby invoking the benefits and protections of the foreign jurisdiction's laws. See Asahi Metal Indus. Co. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (1987).

There are two recognized bases for exercising jurisdiction over a nonresident defendant: (1) "general jurisdiction," which arises where defendant's activities in the forum are sufficiently "substantial" or "continuous and systematic" to justify the exercise of jurisdiction over him in all matters; and (2) "specific jurisdiction," which arises when a defendant's specific contacts with the forum give rise to the claim in question. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984).

2.  <u>Failure to State a Claim</u>

     Federal Rule of Civil Procedure ("FRCP") 12(b)(6)
allows a party to move for dismissal of one or more
claims if the pleading fails to state a claim upon
which relief can be granted.  A complaint must contain
sufficient facts, accepted as true, to state a
plausible claim for relief.  <u>Ashcroft v. Iqbal</u>, 556
U.S. 662, 678 (2009) (quotation omitted).  Dismissal is
warranted for a "lack of a cognizable legal theory or
the absence of sufficient facts alleged under a
cognizable legal theory."  <u>Balistreri v. Pacifica</u>
<u>Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1988)
(citation omitted).

     "In ruling on a 12(b)(6) motion, a court may
generally consider only allegations contained in the
pleadings, exhibits attached to the complaint, and
matters properly subject to judicial notice."  <u>Swartz</u>
<u>v. KPMG LLP</u>, 476 F.3d 756, 763 (9th Cir. 2007)
(citation omitted).  A court must presume all factual
allegations to be true and draw all reasonable
inferences in favor of the non-moving party.  <u>Klarfeld</u>
<u>v. United States</u>, 944 F.2d 583, 585 (9th Cir. 1991).
The question is not whether the plaintiff will
ultimately prevail, but whether the plaintiff is
entitled to present evidence to support the claims.
<u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167, 184
(2005) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236
(1974)).  While a complaint need not contain detailed

                             7

factual allegations, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

**B. Discussion**

    1. <u>Personal Jurisdiction</u>

        a. *Defendants' Evidentiary Objections*

Defendants filed objections to paragraphs six, ten, and eighteen, in the Declaration of Jamie Nocher [22] filed by Plaintiff. <u>See</u> Defs.' Objs. to Decl., ECF No. 26. Defendants' objections to paragraphs six and ten are **OVERRULED as Moot** because the Court does not rely on the evidence. Defendants' objection to paragraph eighteen is **OVERRULED as Moot** with respect to the first sentence,[3] as it is not relied on by the Court. With respect to the subsequent sentences,[4] the objection is **OVERRULED** because Nocher, the principal manager, operator, and owner of Plaintiff, has personal knowledge and there is no inadmissible hearsay.

        b. *Defendants Bio Labs, Outreach, and Health*

            i. *General Jurisdiction*

The Court cannot exercise general jurisdiction over

---

[3] "Plaintiff is informed that defendants have collected millions of dollars from the 10,400 specimens plaintiff provided and for which remain unpaid." Objs. at 3:8-12.

[4] "Whereas, plaintiff has provided and furnished defendants approximately 11,000 specimens for which defendants have paid only for 600 specimens. Since that time defendants have not provided any accounting of the collections on the specimens." Objs. at 3:12-18.

Defendants Bio Labs,[5] Outreach, and Health (hereinafter "Corporate Defendants").  General jurisdiction over a foreign corporation is appropriate when the corporation' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." <u>Goodyear</u> <u>Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 919 (2011) (citing <u>Int'l Shoe</u>, 326 U.S. 310, 317 (1945)).

Corporate Defendants were all organized in Florida and have their principal places of business there. Jurisdiction Mot. at 11:19-21.  Plaintiff did not oppose Defendants' argument that Corporate Defendants do not regularly conduct business in California.  <u>Id.</u> at 4:6-10.  Nor did Plaintiff oppose Defendants' assertion that they do not have employees, nor any place of business, in California.  <u>Id.</u> at 4:6-10. Thus, Corporate Defendants contacts with California are not substantial enough to render them "at home" in California.

ii. *Specific Jurisdiction*

The Ninth Circuit employs a three-part test to determine whether a court has specific jurisdiction

---

[5] Although Defendants argue Bio Labs was not a party to the alleged contract, and that it never conducted any business, Plaintiff argues it entered into a contract with Bio Labs, Outreach, and Health because they were allegedly held out to be one and the same entity.  Nocher Decl. at 2-4.  Resolving this conflict of statements in Plaintiff's favor, as is required at this juncture, the Court includes Bio Labs in its analysis.

over a defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1227-28 (9th Cir. 2011) (citations omitted). Plaintiff bears the burden of proving the first two prongs, and if the Plaintiff does so, the burden shifts to the Defendants to prove a "compelling case" the exercise of jurisdiction would be unreasonable. Id. at 1228.

### A. *Purposeful* Availment

"A purposeful availment analysis is most often used in suits sounding in contract." Schwarzenegger, 374 F.3d at 802. This suit sounds primarily in contract because the alleged fraud arises out of Corporate Defendants' false representations that they would pay Plaintiff a reasonable amount of money and provide Plaintiff with accurate accounts, which are also the grounds for Plaintiff's breach of contract claims. FAC ¶¶ 12, 19, 30-36. See HK China Group, Inc. v. Beijing United Auto & Motorcycle Mfg. Corp., 417 Fed. App'x. 664, 665 (9th Cir. 2011) ("Suits that include both a breach of contract claim and a fraud claim may 'sound

10

primarily in contract' when the alleged fraud is merely
the representations in the contract that gave rise to
the breach."). Thus, a purposeful availment analysis
is proper.

"An out-of-state party does not purposefully avail
itself of a forum merely by entering into a contract
with a forum resident." HK China Group, Inc., 417 F.
App'x. at 666 (citing Burger King Corp. v. Rudzewicz,
471 U.S. 462, 478 (1985)). "[P]rior negotiations and
contemplated future consequences, along with the terms
of the contract and the parties' actual course of
dealing" are considered. Burger King, 471 U.S. at 479.

1. *Prior Negotiations*

Corporate Defendants argue that they did not
purposefully avail themselves of California because
Plaintiff initiated negotiations and met with Corporate
Defendants in Florida. Dawoud Decl. ¶¶ 15, 16, 20.
While such activity weighs against purposeful
availment, it is not determinative. See Hirsch v. Blue
Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1480
(9th Cir. 1986) ("[T]he fact that contract negotiations
. . . occurred outside of California is not
determinative."); LocusPoint Networks, LLC v. D.T.V.,
LLC, No. 3:14-cv-01278-JSC, 2014 WL 3836792, at *5
(N.D. Cal. Aug. 1, 2014) (finding that defendant
solicited plaintiff's business even though plaintiff
initiated contact). Plaintiff responds that
negotiations also occurred via telephone, email, and

11

text-message, but this fact is neutral since "use of
the mails, telephone, or other international
communications simply do not qualify as purposeful
activity invoking the benefits and protection of the
[forum] state." Peterson v. Kennedy, 771 F.2d 1244,
1262 (9th Cir. 1985)).

Nonetheless, the remaining circumstances
surrounding negotiations support a finding of
purposeful availment. Plaintiff alleges Corporate
Defendants normally avoided doing business in
California but made an exception for Plaintiff "because
of the anticipated large volume of business it expected
to generate . . . knowing full well that it was
engaging a California business entity who had special
relationships with California-based providers." FAC ¶
11. Corporate Defendants knew the primary source of
specimens plaintiff would procure were from California
providers, and "California was the primary business-
source [Corporate Defendants] targeted when it engaged
[Plaintiff] to provide the samples." FAC ¶¶ 13, 15.
As such, Corporate Defendants invited Plaintiff to
enroll its accounts. Id. ¶ 12. See Vuori v.
Grasshopper Capital LLC, No. 17-cv-06362-JCS, 2018 WL
1014633, at *13 (N.D. Cal. Feb. 22, 2018) (finding
defendants solicited business in California by
contracting with a plaintiff defendants knew was a
California resident, and whose connections defendants
sought to benefit from).

1          2.  *Future Consequences*

2          When evaluating contemplated future consequences,

3    "courts focus on whether the defendant, in entering the

4    contract, created 'continuing obligations between

5    [itself] and residents of the forum.'"  <u>Calltek, Inc.</u>

6    <u>v. Call Center Systems, LLC et al.</u>, No. 8:18-cv-00384-

7    JLS-DFMx, 2018 WL 2264205, at *7 (C.D. Cal. April 25,

8    2018) (citing <u>Corp. Inv. Bus. Brokers v. Melcher</u>, 824

9    F.2d 786, 789 (9th Cir. 1987)).  By contrast, where a

10   contract merely involves a "lone transaction for the

11   sale of one item" purposeful availment is not

12   established.  <u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1017

13   (9th Cir. 2008).

14         Here, while Plaintiff did not allege a duration for

15   the contractual relationship, the FAC supports at least

16   more than a "lone transaction for the sale of one

17   item."  The sale of the specimens in this Action

18   required ongoing involvement by both parties, and

19   Plaintiff sent specimens to Corporate Defendants over

20   at least a four-month period of time.  Opp'n at 2:23-

21   24.  <u>See</u> <u>LocusPoint Networks, LLC</u>, 2014 WL 3836792, at

22   *6 (finding the parties' continuing obligations to one

23   another requiring "months of substantial coordination

24   and joint effort" leaned in favor of purposeful

25   availment).  Thus, the Court can infer an ongoing

26   contractual relationship with ties to California.

27                  3.  *Terms of Contract*

28         Because the contract is oral or implied, it is

                              13

unclear precisely what its terms consist of.  See FAC
¶¶ 29, 34.  In such instances where "[n]either party
addresses whether the terms of the parties' oral
agreement favor a finding of purposeful availment in a
meaningful way . . . . th[e] factor is neutral and does
not weigh in favor or against a finding of purposeful
availment.  Vuori, 2018 WL 1014633, at *14.

### 4.  *Course of Dealing*

With respect to actual course of dealing, "courts
focus on whether the 'substantial and continuing
relationship' with the forum resident gave the
defendant 'fair notice that he might be subject to
suit' in the forum." Calltek, Inc., 2018 WL 2264205,
at *8 (citing Burger King, 471 U.S. at 463).  Corporate
Defendants knew Plaintiff was a California entity that
would provide specimens predominantly from California
providers, and entered into a contract with Plaintiff
because of business volume it was anticipated to bring.
FAC ¶¶ 11-13.  Moreover, Corporate Defendants
"systematically delivered the necessary supplies and
equipment for the samples directly to the California
entities as indicated by the medical necessity forms."
Id. ¶ 16.  Corporate Defendants' knowledge of and
involvement in the procurement of California-sourced
specimens, reveals their contacts with California were
substantial and not random.  See LocusPoint Networks,
LLC, 2014 WL 3836792, at *7 (citing Burger King, 471
U.S. at 480) (reiterating that the "'quality and

nature' of Defendant's relationship with the company in California" must be more than"random, fortuitous, or attenuated."). Thus, this factor supports purposeful availment.

Because all four factors weigh in favor of finding purposeful availment, the Court finds Corporate Defendants purposefully availed themselves of the benefits and protections of California's laws.

B. *Claim Arises Out Of Forum-Related Contacts*

The Ninth Circuit relies on a "'but for' test to determine whether a particular claim arises out of forum-related activities." Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, Plaintiff's claims for breach of contract and false misrepresentation arise out of its contractual relationship with Corporate Defendants. As discussed, Corporate Defendants purposefully availed themselves of California law through its contract with Plaintiff. "But for" the contract, this lawsuit would not have arisen. See Hirsch, 800 F.2d at 1480 ("Because this contract constitutes [defendant's] contacts with California, the [plaintiffs] satisfy this element of the jurisdictional test."). Thus, the claims arise out of Corporate Defendants' forum-related contacts.

C. *Reasonableness*

If a Plaintiff satisfies the first two elements of a personal jurisdiction analysis, the burden is on the

defendant to prove a "compelling case" that
jurisdiction would be unreasonable.  <u>Burger King</u>, 471
U.S. at 477.  Courts consider seven factors when
evaluating reasonableness:

> (1) the extent of the defendant's purposeful
> interjection into the forum state, (2) the
> burden on the defendant in defending in the
> forum, (3) the extent of the conflict with the
> sovereignty of the defendant's state, (4) the
> forum state's interest in adjudicating the
> dispute, (5) the most efficient judicial
> resolution of the controversy, (6) the
> importance of the forum to the plaintiff's
> interest in convenient and effective relief, and
> (7) the existence of an alternative forum.

<u>Bancroft & Masters, Inc. v. Augusta Nat. Inc.</u>, 223 F.3d
1082, 1088 (9th Cir. 2000) (citation omitted).

The only facts that favor Corporate Defendants are
that it would be burdensome for them to defend in
California, potential evidence is located in Florida,
and an alternative forum exists in Florida.  However,
"modern advances in communications and transportation
have significantly reduced the burden on litigating" in
a different state.  <u>Sinatra v. Nat'l Enquirer, Inc.</u>,
854 F.2d 1191, 1199 (9th Cir. 1988).  <u>See</u> <u>also</u> <u>Roth</u>,
942 F.2d at 623 ("[U]nless such inconvenience is so
great as to constitute a deprivation of due process, it
will not overcome clear justifications for the exercise
of jurisdiction.").  Moreover, the remaining factors
lean in favor of finding jurisdiction reasonable.  On
balance, Corporate Defendants have not presented a
"compelling case" that personal jurisdiction is
unreasonable.  Thus, the Court **DENIES** Defendants'

Motion to Dismiss for Lack of Personal Jurisdiction as to Defendants Outreach, Health, and Bio Labs.

### c. *Defendant Dawoud*

"For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." <u>Daimler AG v. Bauman</u>, 571 U.S. 117, 137 (2014). Dawoud states that he is, and at all relevant times has been, a resident and citizen of Florida. Dawoud Decl. ¶ 4. Plaintiff does not dispute this fact, nor even allege that Dawoud has been to California. Plaintiff's allegations all are based on Dawoud's actions and status as a principal of Corporate Defendants. FAC ¶¶ 5,6. This is insufficient to establish general personal jurisdiction over Dawoud.

With respect to specific jurisdiction, Plaintiff has pleaded no facts to support an assertion that Dawoud purposefully availed himself of conducting business in California. The FAC alleges no acts specifically attributed to Dawoud, nor that Dawoud was a party to the alleged contract at issue. The only actions attributed to Dawoud are contract negotiations in which Dawoud acted as the agent and representative of Outreach, Health, and Bio Labs.[6] Nocher Decl. ¶ 4. This is insufficient to establish that Dawoud, in his individual capacity, should be subject to personal jurisdiction in California. <u>See Davis v. Metro Prods.,</u>

---

[6] Importantly, Dawoud never traveled to California to engage in such negotiations. Dawoud Decl. ¶ 21.

Inc., 885 F.2d 515, 520 (9th Cir. 1989) (describing the fiduciary-shield doctrine—"a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person"); Shimmick Const. Co., Inc./Obayashi Corp. v. Officine Meccaniche Galletti-O.M.G. S.R.L., No. 13-cv-2700-BAS (JLB), 2014 WL 5847440, at *4 (S.D. Cal. Nov. 12, 2014) (same as to a breach of contract claim). Thus, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction as to Defendant Dawoud.

> d. *Request for Jurisdictional Discovery*

Plaintiff in a footnote requests leave to conduct jurisdictional discovery "to resolve those issues to the Court's satisfaction." Opp'n at 8 n.8. Plaintiff does not provide details regarding what the discovery would establish. Because Plaintiff has failed to show more than speculative allegations of attenuated jurisdictional contacts "in the face of specific denials made by [D]efendants" thus far, "the Court need not permit even limited discovery." Terracom v. Valley Nat'l Bank, 49 F.3d 555, 562 (9th Cir. 1995); see Boschetto, 539 F.3d at 1020 (affirming the district court's jurisdictional discovery request denial "based on little more than a hunch that [discovery] might yield jurisdictionally relevant facts"). Thus, the Court **DENIES** Plaintiff's request as to Dawoud, and **DENIES as moot** Plaintiff's request as to Corporate

Defendants.

2.  <u>Failure to State a Claim</u>[7]

    a.  *Defendants' Evidentiary Objections*

Defendants object to the admissibility of the
Declaration of Jamie Nocher filed by Plaintiff [20].
<u>See</u> Defs.' Objs., ECF No. 28.  In ruling on a 12(b)(6)
motion the court only considers allegations in the
pleadings, exhibits attached to the complaint, and
judicially noticed matters.  <u>Swartz</u>, 476 F.3d at 763.
Thus, the Court **SUSTAINS** Defendants' objection.

    b.  *Choice of Law*

A federal court sitting in diversity applies the
choice-of-law rules of the forum state.  <u>Coneff v. AT &
T Corp.</u>, 673 F.3d 1155, 1161 (9th Cir. 2012).  Thus,
the Court applies California's choice-of-law rules.
Here, the parties did not include a choice of law
provision in their alleged Agreement.  Therefore, the
Court applies California Civil Code section 1646 and
section 188 of the Restatement (Second) of Conflict of
Laws.  <u>Rutherford v. FIA Card Services, N.A.</u>, Case No:
11-cv-04433 DDP MANX, 2012 WL 993885, at *2 (C.D. Cal.
Mar. 23, 2012) (citing <u>Arno v. Club Med Inc.</u>, 22 F.3d
1464, 1469 n. 6 (1993)).

California Civil Code section 1646 requires that

---

[7] Because the Court finds that there is no personal
jurisdiction over Defendant Dawoud, the Motion to Dismiss for
Failure to State a Claim is moot as to Defendant Dawoud, and is
only discussed as to the remaining Corporate Defendants.

"[a] contract is to be interpreted according to the law
and usage of the place where it is to be performed; or,
if it does not indicate a place of performance,
according to the law and usage of the place where it is
made."  Cal. Civ. Code § 1646.

The alleged Contract at issue consisted of the
following: (1) Plaintiff had to enroll itself for an
account with Defendants, (2) Defendants were to order
specimens from Plaintiff and direct Plaintiff to have
the specimens sent to their laboratories for testing,
(3) Defendants were to compile and provide Plaintiff
with summarized reports, (4) Defendants had to upload
test results to Defendants' online portal, and (5)
Defendants were to pay Plaintiff a specified portion of
the revenue received by Defendants in Florida.  See FAC
¶¶ 12-13.  Because Defendants' principal place of
business is in Florida, these circumstances indicate
that the parties expected most of these obligations to
be performed in Florida.[8]  Thus, this weighs in favor of
applying Florida law.  See Welles v. Turner
Entertainment, 503 F.3d 728, 738 (9th Cir. 2007) ("When

---

[8] Plaintiff argues that Defendants directed Plaintiff to
send anywhere from 23-50% of the samples to laboratories in
jurisdictions outside of Florida, including hospitals and
providers in Arizona, Mississippi, Montana, and Missouri.  Opp'n
at 11:11-15.  However, even assuming the truth of this assertion,
it does not change the analysis.  Specifically, the Court notes
that at no point in time did Defendants ever request that
Plaintiff send the samples to California.  Thus, in evaluating
whether California or Florida law should apply, the fact still
favors a finding that Florida has a greater relationship to the
transaction than California.

20

the contract does not expressly specify a place of performance . . . the place of performance is the jurisdiction in which the circumstances indicate the parties expected or intended the contract to be performed.").

Moreover, the majority of the factors courts consider pursuant to section 188 of the Restatement (Second), Conflict of Laws favor Florida law.[9] First, contract negotiations predominantly occurred in Florida. Plaintiff initiated negotiations with Defendants and had its representatives meet with Defendants in Florida, while Defendants never traveled to California.[10] Second, as discussed above, the Court can infer that the parties expected the bulk of contractual duties to be performed in Florida. Further, even if Defendants knew Plaintiff would procure most specimens from California providers, the location from which the specimens were procured was

---

[9] The Restatement (Second), Conflict of Laws § 188(1) states that if parties to a contract fail to make a choice of law agreement, the contract will be determined by the "law of the state which, with respect to that issue, has the most significant relationship to the transaction." In making such determination, relevant factors include: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. Restatement (Second), Conflict of Laws § 188(2).

[10] In negotiating the contract, the parties also corresponded via telephone, email, and text-message. However, without more information about such correspondence, this fact is neutral.

merely a secondary concern to Plaintiff's primary task.[11]  Lastly, the parties' domicile and place of incorporation is neutral, since Plaintiff is a California corporation doing business in California, and Defendants are Florida entities.  FAC ¶¶ 1-4.

In conclusion, these factors support a finding that Florida has the most significant relationship to the transaction.[12]  Thus, Florida law applies to the contractual claims at issue, which include Plaintiff's claims for: (1) breach of implied contract, (2) breach of oral contract, (3) common counts, (4) unjust enrichment, and (5) accounting.

Plaintiff's remaining claims for deceit/negligent misrepresentation are governed by FRCP 9(b), which applies to deceit and negligent misrepresentation

---

[11] Plaintiff alleges that "[o]n or about April 19, 2017, Plaintiff enrolled an account with defendants for the sale of specimens as ordered by defendants for defendants' laboratory." FAC ¶ 12.  (emphasis added).  Importantly, Plaintiff does not say that it enrolled an account for the sale of specimens *from California*, nor even that Plaintiff was required or directly ordered by Defendants to procure specimens from California.

[12] After determining the state with the most significant relationship to the matter, "the court then applies that information to factors set out in section 6(2) of the Restatement, such as the interstate system's needs, the various states' respective interests in the issue, the protection of the reasonable expectations, and that provision of uniform, predictable results."  Rutherford v. FIA Card Services, N.A., No. CV 11-04433 DDP (MANx), 2012 WL 5830081, at *4 (C.D. Cal. Nov. 16, 2012).  Because the Section 188(2) factors weigh in favor of applying Florida law, the section 6(2) factors also weigh in favor of Florida law.  Id. (concluding that because the section 188(2) factors weighed in favor of California, the section 6(2) factors favored application of California law).

claims in Florida and California.  <u>Lamm v. State St.</u>
<u>Bank & Tr.</u>, 749 F.3d 938, 951 (11th Cir. 2014) ("Rule
9(b)'s heightened pleading standard applies to
negligent misrepresentation claims"); <u>Bosco Legal</u>
<u>Servs. v. Hiscox Inc.</u>, No. EDCV 18-48-GW(SHKx), 2018
U.S. Dist. LEXIS 99384, at *21 (C.D. Cal. June 11,
2018) (citations omitted) ("It is well-established in
the Ninth Circuit that both claims for fraud and
negligent misrepresentation must meet Rule 9(b)'s
particularity requirements.").[13]  As discussed below,
Plaintiff fails to satisfy this federal pleading
standard.  Because the claim fails under either state's
laws, the Court need not engage in a choice of law
analysis for this claim.

     c.  *Deceit/Negligent Misrepresentation*

FRCP 9(b) requires that when "alleging fraud or
mistake, a party must state with particularity the
circumstances constituting fraud or mistake."
Plaintiff alleges that in or around early November

---

[13] Some Ninth Circuit courts are divided as to whether Rule
9(b) applies to negligent misrepresentation claims generally, but
courts consistently have found that where the plaintiff's claim
sounds in fraud, Rule 9(b) applies.  <u>See</u> <u>McNeil v. Wells Fargo</u>
<u>Bank, N.A.</u>, No. 13-5519 SC, 2014 U.S. Dist. LEXIS 165464, at * 3
(N.D. Cal. Nov. 25, 2014) (citing <u>Vess v. Ciba-Geigy Corp. USA</u>,
317 F.3d 1097, 1103 (9th Cir. 2003))(holding that a claim "sounds
in fraud where a plaintiff 'allege[s] a unified course of
fraudulent conduct and rel[ies] entirely on that course of
conduct as the basis of a claim.'").  The FAC alleges that
Defendants acted knowingly and with oppression, fraud, or malice,
and relies on this as the basis of the negligent
misrepresentation claim.  FAC ¶¶ 25-27.  Thus, this claim is
analyzed under Rule 9(b) per California law.

2017, "Defendants" provided Plaintiff by e-mail an Excel spreadsheet indicating the amounts Defendant collected on Plaintiff's samples for September 2017, and that Defendants falsified the amounts in the spreadsheet.[14]  Id. ¶¶ 18-20.  This conclusory allegation will not pass muster under Rule 9(b).  See Midamerica C2L, Inc. v. Siemens Energy, Inc., No. 6:17-cv-171-Orl-40KRS, 2017 U.S. Dist. LEXIS 53595, at *9 (M.D. Fla. Apr. 7, 2017) ("[T]he plaintiff must identify . . . the time, place, and person responsible for each misrepresentation"); Saldate v. Wilshire Credit Corp., 686 F. Supp. 2d 1051, 1065 (E.D. Cal. 2010) (citations omitted) ("[I]n a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.").  Plaintiff does not identify who is responsible for the misrepresentations, from which email address the falsified spreadsheet was sent, or any other such relevant information.  Thus, Plaintiff's allegations regarding Defendants' false representations fail to adequately state a claim under the Rule 9(b)

---

[14] For example, Plaintiff alleges that "[i]n some cases, a $19,000 payment turned into 0 or $5,000 turned into $500." FAC ¶ 20.  Plaintiff's independent investigations show that "there were many payments of twenty-thousand dollars ($20,000.00) gross per specimen paid to defendants that were never accounted for or paid to Plaintiff." Id.

heightened pleading standard.

d. *Breach of Implied Contract*[15]

A contract implied in fact exists where "a person performs services at another's request . . . and under circumstances' fairly raising the presumption that the parties understood and intended that compensation was to be paid." <u>Commerce P'ship 8098 Ltd. P'ship</u>, 695 So.2d at 386. Plaintiff alleges Defendants ordered Plaintiff to furnish approximately 11,000 specimens, and Defendants have only paid for 600 specimens. FAC ¶¶ 29-32. These facts sufficiently allege breach of an implied in fact contract.

With respect to Defendants' argument that the claim must be dismissed because Plaintiff fails to allege the absence of an express contract, even if ultimately "the law will not recognize an implied-in-fact contract where an express contract exists," <u>Baron v. Osman</u>, 39 So.3d 449, 451 (Fla. Dist. Ct. App. 2010), the Court is not aware of any Florida authority holding that a plaintiff must affirmatively plead the absence of an express contract in alleging breach of an implied in

---

[15] Defendants argue that it is unclear whether Plaintiff alleges a breach of an implied in fact contract, or breach of an implied of law contract. Mot. at 15:21-23. However, because Plaintiff asserts a breach of an implied in law contract through its unjust enrichment claim, it is apparent to the Court that Plaintiff here asserts a claim for breach of an implied in fact contract. <u>See</u> <u>Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.</u>, 695 So.2d 383 (Fla. Dist. Ct. App. 1997) (citations omitted) (stating that Florida courts synonymously use the term unjust enrichment "[t]o describe the cause of action encompassed by a contract implied in law").

fact contract.  Indeed, at the motion to dismiss stage, Plaintiff can plead inconsistent claims in the alternative.  See id. (finding plaintiff's complaint contained "sufficient allegations to establish the existence of an express oral contract or, in the alternative, an implied-in-fact contract.").  Thus, the Court **DENIES** Defendants' Motion as to this claim.

e.  *Breach of Oral Contract*

A breach of contract claim requires "(1) a valid contract; (2) a material breach; and (3) damages." Friedman v. New York Life Ins. Co., 985 So.2d 56, 58 (Fla. Dist. Ct. App. 2008).  To establish a valid oral contract, a plaintiff must allege "offer, acceptance, consideration and sufficient specification of essential terms." St. Joe Corp. V. Mclver, 875 So.2d 375, 381 (Fla. 2004).  Here, Plaintiff fails to allege essential terms, such as the duration of the contract, the quantity of specimen Plaintiff was to procure, or the specific services Plaintiff was to provide.  Further, Plaintiff pleads inconsistent facts regarding the price that Defendants were to pay under the contract.[16]  See Jacksonville Port Authority v. W.R. Johnson

---

[16] Plaintiff incorporates the following inconsistent facts in its claim for breach of oral contract: "[a]s of August 2017 defendants had paid plaintiff one hundred seventy thousand dollars ($170,000) for approximately 600 specimens.  This established an average price/specimen of $283.33 that defendants promised to pay plaintiff" and "defendants promised to pay plaintiff 50% of net payment received (less 30% on hospital fees) and then 50% of the remainder; and from which defendant also deducted $150.00 per paid sample." FAC ¶¶ 30, 34.

Enterprises, Inc., 624 So.2d 313, 315 (Fla. Dist. Ct.
App. 1993) ("[f]ailure to sufficiently determine
quality, quantity, or price may preclude the finding of
an enforceable agreement."). Thus, Plaintiff failed to
plead the existence of a valid contract as is required
for a breach of oral contract claim, and the Court
**GRANTS** Defendants' Motion as to this claim.

       f. *Common Counts*

     Plaintiff alleges common counts, in an action for
*quantum valebant* for the value of the goods provided or
for *indebitatus assumpsit* for the balance due on
specimens Plaintiff furnished to Defendants. The Court
notes that these are two of the common counts in
general assumpsit, which "have now become practically
obsolete." Matthews v. Matthews, 222 So.2d 282, 285
(Fla. Dist. Ct. App. 2nd 1969). To the extent courts
still recognize such claims, here they are dismissed
because they are repetitive of Plaintiff's unjust
enrichment claim, in which Plaintiff alleges the same
essential facts and seeks the same relief. See
Reliastar Life Ins. Co. v. Kiel, No.
3:08-CV-751-J-34MCR, 2010 WL 11507705, at *3 n.2 (M.D.
Fla. July 29, 2010) (quoting Moore Handley, Inc. v.
Major Realty Corp., 340 So.2d 1238, 1239 (Fla. Dist.
Ct. App. 1976)) ("The outcome is the same, whether one
labels the claim 'with the terminology of the old
common count for money had and received (indebitatus
assumpsit) or the more current restitution to prevent

unjust enrichment.'"). Thus, the Court **GRANTS**
Defendants' Motion as to common counts.

g. *Unjust Enrichment*

"A claim for unjust enrichment is equitable in
nature, and thus, is not available when there is an
adequate legal remedy." Reliastar Life Ins. Co., 2010
WL 11507705, at *3. Here, rather than plead in the
alternative, Plaintiff incorporates its claim for
breach of an express oral contract into its claim for
unjust enrichment. See FAC ¶ 42; Spring Air Int'l, LLC
v. R.T.G Furniture Corp., No. 8:10-cv-1200-T-33TGW,
2010 U.S. Dist. LEXIS 114490, at *6-7 (M.D. Fla. Oct.
19, 2010) (dismissing plaintiff's unjust enrichment
claim because plaintiff incorporated the allegations of
an express contract into its claim for unjust
enrichment). As a result, the Court **GRANTS** Defendants'
Motion as to the unjust enrichment claim.

h. *Accounting*

Plaintiff summarily states it is entitled to an
*accounting of all the monies and property defendants*
obtained and realized from the specimens. Id. ¶ 45.
In Florida, "an accounting is best understood as a
remedy for a cause of action, not as a cause of action
in its own right." Zaki Kulaibee Establishment v.
McFliker, 771 F.3d 1301, 1310 n.21 (11th Cir. 2014).
Where a complaint alleges claims for breach of contract
and accounting regarding the same facts, as is the case
here, both causes of action can only be maintained "by

showing 'that the accounts between the parties' are of such a complicated nature that only a court of equity can satisfactorily unravel them.'" <u>Managed Care Solutions, Inc. v. Essent Healthcare, Inc.</u>, 694 F. Supp. 2d 1275, 1279 (S.D. Fla. 2010)(quoting <u>Dairy Queen, Inc. V. Wood</u>, 369 U.S. 469, 478 (1962)). Here, Plaintiff does not argue the accounts are so complicated as to require an accounting. Thus, the Court **GRANTS** Defendants' Motion regarding this claim.

> i. *Leave to Amend*

A plaintiff may amend the complaint once "as a matter of course" before a responsive pleading is served. Fed. R. Civ. P. 15(a). After that, the "party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires." <u>Id.</u> "Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality.'" <u>United States v. Webb</u>, 655 F.2d 977, 979 (9th Cir. 1981) (internal quotations and citation omitted).

While Plaintiff previously amended its Complaint, this was not in response to the Court finding the Complaint was deficient. Because the biggest issues with Plaintiff's allegations are that they do not contain sufficient facts or do not clarify that they are being pleaded in the alternative, there is a strong chance that amendment will cure these deficiencies. Accordingly, the Court **GRANTS LEAVE TO AMEND**.

### III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Jurisdiction as to Dawoud and **DENIES** Defendants' Motion to Dismiss for Lack of Jurisdiction as to Defendants Outreach, Health, and Bio Labs.  The Court also **DENIES** Plaintiff's request for judicial discovery as to Dawoud, and **DENIES AS MOOT** Plaintiff's request for judicial discovery as to Defendants Outreach, Health, and Bio Labs.  The Court **DENIES** Defendants' Motion to Dismiss for failure to state a claim as to Plaintiff's breach of implied contract claim.  Further, the Court **GRANTS** Defendants' Motion to Dismiss for failure to state a claim as to the following: (1) deceit/negligent misrepresentation , (2) breach of oral contract, (3) common counts, (4) unjust enrichment, and (5) accounting.  Plaintiff is granted 21 days leave to file an Amended Complaint.

**IT IS SO ORDERED.**


DATED: November 16, 2018          s/ RONALD S.W. LEW
                                  **HONORABLE RONALD S.W. LEW**
                                  Senior U.S. District Judge